UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAJESTEC 125, LLC,

               Plaintiff,

                                    Case No. 1:06-cv-104

v.

                                      Hon. Wendell A. Miles

SEALIFT, INC.,

               Defendant.

_____/

OPINION AND ORDER

       This is a patent infringement case brought by Majestec 125, LLC (Majestec) against

Sealift, Inc. (Sealift).  Presently before the Court is Sealift's Motion to Dismiss for lack of

personal jurisdiction or improper venue (docket #6).  For the reasons discussed below, the

Court finds that it does not have personal jurisdiction over Sealift and the Western District of

Michigan is an improper venue.  Accordingly, the Court grants Sealift's motion.

Background

       Majestec, a corporation based in Comstock Park, Michigan,  manufactures dinghy lifts.

It  claims it is the sole and exclusive owner of United States Patent No. 6,474,265 B1, entitled

"Dinghy Lift."  Gregory Vogel and Robert Zwiers are the principals in Majestec.  Sealift is a

corporation based in Cocoa, Florida.  Brothers Stephen and Carl Johns are the principals in

Sealift.

       According to Majestec, in October 2004, while Mr. Vogel was representing Majestec at

a boat convention in Miami, Florida, he was approached by Stephen Johns, who voiced his

interest in becoming an authorized dealer of Majestec's dinghy lift.  Mr. Vogel advised Stephen

Johns to speak with Mr. Zwiers at the boat show in Fort Lauderdale, Florida , which was

scheduled for the following week.  Stephen Johns did meet with Mr. Zwiers in Fort Lauderdale,

and reiterated his interest in becoming a Majestec dealer.  When Mr. Zwiers returned to

Michigan, he and Mr. Vogel decided to form the proposed manufacturer-dealer relationship

with Stephen and Carl  Johns.  After several telephone calls between the parties, on

November 24, 2004, Majestec sent a formal Dealer Agreement to Stephen and Carl Johns.

Pls.' Reply, Ex. B.  The Dealer Agreement contained a clause providing that Sealift would

submit to the jurisdiction of the State of Michigan, and all claims arising under the Agreement

would be brought in the state or federal courts located in Kent County, Michigan.  However, it

was never signed and delivered to Majestec, although the Johns brothers repeatedly reported

they were in the process of signing and returning the agreement.  Despite the lack of a written

agreement, Majestec immediately began sending Sealift customer referrals.  The Dealer

Agreement required that Sealift purchase a demonstration dinghy lift to use in promoting sales.

Mr. Zwiers wrote to Sealift advising that he would be at a boat show in Tampa, Florida on

December 2-5, 2004, and proposed that Sealift purchase the demonstration model from the boat

show as its demonstration dinghy lift.  Sealift agreed, and picked up Majestec's demonstration

model at the end of the boat show.

Sealift continued to contact Majestec.  It sought information about the Magnuson-Moss

Warranty Act, which Majestec provided on December 14, 2004.  It requested information

regarding the aluminum construction of the lift and its ability to withstand salt water, which

Majestec provided on December 16, 2004.  It requested technical drawings regarding the

construction of the lift, which Majestec provided on December 20, 2004.  During this time period, Majestec, with Sealift's knowledge, began informing potential customers that Sealift was its authorized dealer and began placing advertisements in national boating publications stating that Sealift was its authorized dealer.  Beginning in early 2005, Sealift telephoned Majestec on three occasions to purchase dinghy lifts for resale.  Sealift duly paid the purchase prices, receiving the dealer's discount.  It also requested that Majestec come to Florida to teach Sealift about the technical aspects of installing and using the lift, which Mr. Vogel did on February 15-16, 2005.

Thereafter, Sealift stopped doing business with Majestec, and allegedly began manufacturing and selling a "knock-off" of Majestec's dinghy lift.  Sealift placed advertisements for its dinghy lift on its web site, and placed advertisements in two national trade magazines that are circulated in Michigan.  Mr. Zwiers avers that Sealift has made at least one offer to sell its product to a resident of Traverse City, Michigan.  (See Declaration of Robert Zwiers, docket #14).  Majestec claims that Sealift is willfully manufacturing, using, offering for sale, or selling products that infringe upon Majestec's patent.

Sealift argues that it is not subject to this Court's jurisdiction because Sealift has had absolutely no contacts with the State of Michigan.  It has never sold its products in Michigan, had a place of business, bank account, or employee in Michigan, attended a trade show in Michigan, inventoried its product in Michigan, and owns no land in Michigan.  (Declaration of Carl Johns, Ex. to Defendant's Motion to Dismiss).  It further argues that venue is improper in the Western District of Michigan.

<u>Standard of Review</u>

Sealift contends that this case should be dismissed without prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or (b)(3) for improper venue.  In deciding a jurisdiction question in a patent infringement case, the Court must follow the standard of review set forth by the Federal Circuit, and  apply the law of the Federal Circuit  rather than the law of the Sixth Circuit.  <u>Hildebrand v. Steck Mfg. Co., Inc.</u>, 279 F.3d 1351, 1354 (Fed.Cir.2002).  At this stage of the proceedings, the plaintiff bears the burden of establishing by a preponderance of the evidence a *prima facie* case of personal jurisdiction.  <u>Trintec Industries, Inc. v. Pedre Promotional Products, Inc.</u>, 395 F.3d 1275, 1282-1283 (Fed.Cir.2005).  When ruling on a motion under Rule 12(b)(2) without conducting an evidentiary hearing, the court must construe the pleadings, affidavits and other evidence in a light most favorable to the plaintiff.  <u>Drepenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation</u>, 297 F.3d 1343, 1347 (Fed. Cir. 2002).  If the plaintiff's factual allegations are "not directly controverted, [they] are taken as true for purposes of determining jurisdiction."  <u>Akro Corp. v. Luker</u>, 45 F. 3d 1541, 1543 (Fed. Cir. 1995), citing <u>Beverly Hills Fan Co. v. Royal Sovereign Corp.</u>, 21 F.3d 1558, 1563 (Fed. Cir. 1994).

I.  <u>Personal Jurisdiction</u>

 Under Michigan law and the due process clause, the Court may exercise either general personal jurisdiction or specific personal jurisdiction.  General jurisdiction exists where the defendant has substantial, continuous and systematic contacts with the forum, although the contacts may be unrelated to the instant cause of action.  <u>Helicopteros Nacionales de Colombia S.A. v. Hall</u>, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed 2d 404 (1984); <u>Nationwide Mutual Ins.</u>

4

Co. v. Tryg Intern. Ins. Co., 91 F. 3d 790, 793 (6th Cir. 1996).  Plaintiff does not contend that
this Court has general jurisdiction over Sealift.

      Where general jurisdiction is lacking, specific jurisdiction may be found when a foreign
defendant "has purposefully directed his activities at residents of the forum, and the litigation
results from alleged injuries that arise out of or relate to those activities."  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 472 (1985).  The specific jurisdiction inquiry involves two parts: (1)
whether the defendant is amenable to service of process under the state's long arm statute, and
if so, (2) whether the federal court's assertion of jurisdiction under the long arm statute
comports with the requirements of due process.  Red Wing Shoe Co. v. Hockerson-Halberstadt,
148 F. 3d 1355, 1358 (Fed. Cir. 1998).  Michigan's long arm statute is "limited by due process,
and therefore, the statute and due process share the same outer boundary."  Green v. Wilson,
455 Mich. 342, 350 (1997); and see Michigan Coalition of Radioactive Material Users v.
Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992) (questions of personal jurisdiction in
Michigan are analyzed within the framework of the constitutional constraints of due process).
The question, therefore, is whether exercising personal jurisdiction over Sealift in Michigan
comports with federal due process requirements.  See Akro Corp., 45 F. 3d at 1544.

      To satisfy due process the defendant must have "certain minimum contacts with [the
forum state] such that the maintenance of the suit does not offend traditional notions of fair
play and substantial justice."  Int'l Shoe Co. v. Wash., 326 U.S. 310, 316.  Minimum contacts
exist if "the defendant's conduct and connection with the forum State are such that he should
reasonably anticipate being haled into court there."  Burger King v. Rudzewicz, 471 U.S. 462,
474 (1985).  The defendant's contacts must be "purposely directed" toward a resident in the

5

forum state.  The defendant must intend to avail himself of the privilege of conducting activities in the forum state, invoking the "benefits and protections" of the forum's laws. Burger King, 471 U.S. at 475-76.  "Purposeful" availment is intended "to insure that 'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." Id. at 474-75. A single act may support specific jurisdiction where the act is directed at residents of the forum, and the cause of action relates to the act. Id. at 476 n.18.

The Federal Circuit has set forth a three-prong test for determining whether jurisdiction over an out-of-state defendant comports with due process.  The test asks (1) whether the defendant "purposefully directed" its activities at the forum; (2) whether the claim "arises out of or relates to the defendant's actions with the forum," and (3) whether the assertion of personal jurisdiction is "reasonable and fair."  Akro Corp., 45 F. 3d at 1543.  Thus, jurisdiction would be proper in this case if the activities engaged in by Sealift in Michigan establish that Sealift has "purposefully avail[ed]" itself of the forum state, and this litigation arises out of or relates to those activities.

Patent law specifies that a party infringes a patent when it "makes, uses, offers to sell, or sells any patented invention, within the United States."  See  North American Philps v. American Vending Sales, 35 F. 3d 1576, 1578-79 (Fed. Cir. 1994); 35 U.S.C. § 271(a).  "The statute does not speak generally of the 'tort of patent infringement,' but specifically of a liability that arises upon the making, using, or selling of an infringing article.  Thus, the statute on its face clearly suggests the conception that the 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt."  *Id.* at 1579.

6

Sealift contends that it has never had any contact with the state of Michigan relating to the instant patent infringement claim.  Majestec cites to the following actions as establishing the necessary "purposefully directed" minimum contacts: Sealift, (a) solicited a dealership relationship with a Michigan corporation, which amounts to a license to sell Majestec's patented invention, (b) called and wrote in furtherance of the dealership relationship, (c) orally agreed to terms of the agreement, (d) asked for and received drawings for the patented device, (e) purchased a demonstration dinghy lift in order to solicit sales, (f) requested  Majestec to teach it to install and use its dinghy lift, (g) ordered 3 units for resale, obtaining a dealer discount, (h) advertised its own product on its website and in trade magazines that reached Michigan residents, and (i) made one offer to sell its product in the Western District of Michigan.

The majority of actions cited by Majestec relate to Sealift's conduct in furtherance of a manufacturer-dealer relationship: they (a) solicited a dealership relationship with a Michigan corporation, (b) called and wrote in furtherance of the dealership relationship, (c) orally agreed to terms of a dealership agreement, (d) asked for and received drawings for the patented device, (e) purchased a demonstration dinghy to solicit sales, (f) requested  Majestec to teach it to install and use the dinghy lift, and (g) ordered 3 dinghies for resale, obtaining a dealer discount. Assuming these activities were purposefully directed at a Michigan resident, thereby creating a substantial connection with the state, they would likely establish the necessary minimum contacts in a lawsuit arising from the manufacturer-dealer relationship between the parties. However, because these contacts do not pertain to "the making, using, offering to sell or selling an infringing product," plaintiff's claim of patent infringement does not arise from Sealift's

purported attempt to establish or further a manufacturer-dealer relationship with Majestec.  If the manufacturer-dealer relationship had never been discussed and Sealift produced a "knock-off" dinghy lift, Majestec would have the same cause of action it is now asserting.

Majestec argues that a distributor appointed to sell a product covered by a patent is analogous to the grant of a patent license, citing Genetic Implant Systems, Inc. v. Core-Vent Corp., 123 F.3d 1455, 1458 (Fed. Cir. 1997), and therefore, Sealift's activities regarding the dealership relate to what would be deemed a licensing arrangement.  Genetic Implant presented entirely different circumstances than those in this case.  In Genetic Implant, the defendant, who manufactured dental implants, entered into an exclusive worldwide marketing and distribution agreement with Dentsply International.  Dentsply International made substantial sales of the defendant's patented product in the state of Washington, and had two sales representatives in the state.  When the defendant threatened to sue a Washington corporation for patent infringement, the Washington corporation filed a declaratory judgment action.  The court concluded that the defendant purposefully directed activities toward the state of Washington based upon Dentsply's activities there.  The court noted that the agreement appointed Dentsply as the "exclusive worldwide distributor," and contained other provisions typically found in a patent license agreement.  The defendant agreed to maintain all patents covering its product, to file and prosecute applications for patents covering new products, to pursue claims for infringement, and to indemnify Dentsply for liability arising from any third party patent infringement action related to Dentsply's sale, use or making of the products.  Id. at 1458-59. In contrast, the dealer agreement prepared in this case granted Sealift a "non-exclusive" right to sell Majestec's dinghy lift in the "market served by" Sealift.  Sealift would "not be considered

an agent, employee, partner or legal representative," of Majestec.  Moreover, the agreement did

not include those provisions typically found in license agreements, such as Majestec's

obligation to maintain its patent, prosecute applications for patents covering new products,

pursuing claims for infringement or indemnifying Sealift for any patent infringement liability.

(See Plaintiff's exh. B, docket #11).  While the distributorship agreement in Genetic Implant

was analogous to a licensing agreement, the dealer agreement in this case is not.

Majestec states that a defendant does not need to have had a physical presence in the

forum states to warrant specific jurisdiction, which is correct.  However, the cases cited by

Majestec present substantially different circumstances than those presented here.  In

Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344 (Fed. Cir. 2003), the California plaintiff

successfully established specific jurisdiction over a Nevada corporation.  While its application

for a patent was pending, the defendant hired a California attorney who contacted the plaintiff

several times to report on the progress of the patent application.  The defendant also contacted

the plaintiff on several occasions regarding the subject matter of the technology covered by the

patent application.  In Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995), the court found that

the Ohio court had personal jurisdiction over a California defendant.  The defendant sent letters

to the plaintiff in Ohio alleging patent infringement, but more significantly, had entered into an

exclusive license agreement with an Ohio corporation that was plaintiff's competitor in the

Ohio marketplace.  A New Jersey patentee was subject to personal jurisdiction in California in

Inamed Corporation v. Kuzmak, 249 F.3d 1356 (Fed. Cir. 2001), where the patentee sent

infringement letters to a California corporation and successfully negotiated four license

agreements with the corporation.  The California corporation subsequently paid the patentee

9

more than $1.3 million dollars based on the sale of the patented product manufactured at the California facilities.  Id. at 1361.  In each of these cases cited by Majestec, the defendants' oral and written communications directed at the forum states related directly to the respective patents involved.  Here, Sealift's oral and written communications pertained to negotiating a manufacturer-dealer arrangement.  Prior contacts with the forum state unrelated to the patent infringement claim cannot form the basis for specific jurisdiction.  Red Wing Shoe Co., 148 F.3d at 1358.

According to Majestec, Sealift also advertised its allegedly infringing product on its website and in trade magazines that reached Michigan residents.  It is well established that merely advertising in trade publications is not a sufficient basis for establishing personal jurisdiction.  See e.g., Doering ex rel. Barrett v. Copper Mountain, Inc., 259 F.3d 1202, 1211 (10th Cir. 2001); Singletary v. B.R.X., 828 F.2d 1135, 1136 (5th Cir. 1987); Hi-Tex, Inc. v. TSG, Inc., 87 F.Supp.2d 738, 743 (E.D. Mich. 2000), citing Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993); Caribbean Broadcasting Sys. v. Cable & Wireless PLC, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998); S.F. Hotel Co. v. Energy Investments, 985 F.Supp. 1032, 1034 (D.Kan. 1997); Zumbro, Inc. v. California Natural Products, 861 F. Supp. 773, 779 (D.Minn. 1994); Volkswagen De Mexico v. Germanischer Lloyd, 768 F. Supp 1023 (S.D.N.Y. 1991); Applied Biosystems v. Cruachem, Ltd., 772 F.Supp. 1458, 1471 (D.Del. 1991).  The court in Hi-Tex explained that "[t]o hold otherwise would subject every business entity that advertises in a nationally distributed magazine to personal jurisdiction through out the United States."  Hi-Tex, 87 F.Supp.2d at 743.

10

In Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. 1997), which the majority of courts use for guidance when considering the website issue, the court identified websites as either interactive or passive. An interactive website allows consumers to make purchases directly from the website, and generally will support personal jurisdiction in a given forum. Id.; Bird v. Parsons, 289 F.3d 865, 874 (6th cir. 2002). However, where a defendant has created a passive website that merely provides information to users, personal jurisdiction is not proper. Zippo, at 1124; Carefirst of Maryland v. Carefirst Pregnancy Centers, 334 F.3d 390, 400 (4th Cir. 2003); Bird v. Parsons, 289 F.3d 865, 873-74 (6th Cir. 2002) (holding that the defendant's passive website was not sufficient to justify general jurisdiction); Mink v. AAAA Dev. LLC, 190 F.3d 333 (5th Cir. 1999) (holding that electronic mail access, a printable order form, and a toll-free number on a website is insufficient to establish personal jurisdiction); Panavision Int'l v. Toeppen, 141 F.3d 1316, 1321 (9th Cir. 1998) (holding that something more than posting and accessibility is needed to indicate that a defendant purposefully directed its activity in a substantial way to a forum); Edberg v. Neogen Corp., 17 F.Supp. 2d 104, 114 (D. Conn. 1998) (finding no personal jurisdiction where users of the defendant's website could not order products directly from the website, and the website was not directed at residents of the forum state any more than any other state). Sealift's website is best characterized as passive. (See Plaintiff's exh. L, docket #11). It provides information on Sealift's product and a video presentation of the product. The website user may download a proposal form and an equipment installation form, but is not able to order directly from the website, nor does the website quote prices. Thus, Sealift's advertising efforts do not support personal jurisdiction in Michigan, even though both the trade magazines and website may reach Michigan residents to the same

extent the advertisements reach residents of all the states.

Sealift's most significant contact with Michigan relevant to the jurisdiction question is its alleged offer to sell its product to a Michigan resident.  According to Mr. Zwiers' sworn declaration, he is aware of at least one offer for sale in Michigan.  He states:

> In particular, we have a customer who resides in Traverse City, Michigan, named Bob Schmerheim.  That customer has informed me that, prior to purchasing our lift, he received a price quotation from Stephen Johns, and the phone records confirm that Mr. Johns called the customer.  In connection with that offer, Mr. Johns instructed the customer he can remove a rivet on Sealift's lift in order to make it removable.  (Declaration of Robert Zwiers, ¶ 16).

Stephen Johns responded with a sworn declaration stating in part:

> Our only communication with Mr. Bob Schmerheim constituted an email, a copy of which is attached to this declaration.  It does not constitute and [sic] offer to sell and, since it was an email, we really don't know where Mr. Schmerheim was located if and when he received it.

> It is quite possible that I have made telephone calls to the state of Michigan.  I do return telephone calls, but I do not check the area code to see where the caller is located. (Declaration of Stephen Johns, Ex. A to Defendant's Reply Brief, docket #15).

The message on the e-mail attached to Stephen Johns' declaration states in whole, "John, per your request my e-mail address so that you can send me more sea lift installation pix on a 2004 Sundancer.  Thanks, BOB."  It appears that someone representing Sealift asked Mr. Schmerheim to provide Sealift with his e-mail address (i.e. "per your request").  Because Sealift did not know Mr. Schmerheim's e-mail address prior to this communication, the request was likely made by letter or telephone contact, which indicates that this e-mail was not Sealift's "only communication with  Mr. Bob Schmerheim," as asserted by Stephen Johns.  Drawing all

reasonable inferences in favor of Majestec, this dealing with Mr. Schmerheim would satisfy the minimum contact requirement if Majestec's claim arises from or directly relates to this activity. Majestec's claim arises from or relates to this contact with Mr. Schmerheim if the contact constitutes an "offer to sell."

An offer to sell has been defined as "a description of the allegedly infringing merchandise and the price at which it can be purchased." 3D Systems, Inc. v. Aarotech Laboratories, 160 F.3d 1373, 1379 (Fed. Cir. 1998). In 3D Systems, the court found that the defendant's letters to California residents that included a description of the infringing product with price quotations created an "offer to sell" to those particular residents. If 3D Systems was the last word on the subject, Sealift's alleged dealings with Mr. Schmerheim would constitute an offer to sell. However, in the later decided case of Rotec Indus., Inc. V. Mitsubishi Corp., 215 F.3d 1246 (Fed. Cir. 2000), the court found that "offer to sell" was to be defined "according to the norms of traditional contractual analysis." Id. At 1255-56. A defendant "must communicate[] a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Id. at 1257. In Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1047 (Fed. Cir. 2001), the Court reiterated that the question of whether an invention is the subject of an offer to sell is "to be analyzed under the law of contracts as generally understood," and stated that "[a]s a general proposition, we will look to the Uniform Commercial Code (UCC) to define whether . . . a communication or series of communications rises to the level of a commercial offer for sale." Id. at 1339. "[C]ontract law traditionally recognizes that mere advertising and promoting a product may be nothing more than an invitation for offers, while

13

responding to such an invitation may itself be an offer." Id. at 1048, citing Restatement (Second) of Contracts, §§ 26 (1981).  Generally, courts that have addressed the issue after Rotec have concluded that under traditional contract principles and case law interpreting the UCC, an "offer to sell" must create a power of acceptance.  In turn, to create a power of acceptance, the terms of the communication must include specific, definite terms.  See e.g., Moldflow Corp. v. Simcon, Inc., 296 F.Supp.2d 34, 43-44 (D.Mass. 2003) (where the communication did not include information about quantity, time of delivery, or terms of payment, the lack of definite terms in the communication made it only an advertisement or solicitation); Xactware, Inc. v. Symbility Solution, Inc., 402 F.Supp.2d 1359 (2005) (same); Wesley Jessen Corp. v. Bausch & Lomb, Inc., 256 F.Supp.2d 228 (D.Del. 2003);  Elan Corp., PLC v. Andrx Pharmaceuticals, Inc., 272 F.Supp.2d 1325, 1339 n.5 (S.D. Fla. 2002) (recognizing the conflict between 3D Systems and Rotec, and adopting the Rotec approach); and see Hollyanne Corp. v. TFT, Inc., 199 F.3d 1304, 1308 (Fed. Cir. 1999) (noting that under patent law an offer to sell contains "the hallmarks of a potential commercial transaction.").  Guided by Rotec and the cases that followed, the Court is compelled to find that the evidence presented by Majestec does not demonstrate that Sealift's contact with Mr. Schmerheim rises to the level of an "offer to sell."

        II.  Proper Venue

        In patent infringement cases venue is proper (a) where the defendant resides, or (b) where the defendant has committed acts of infringement and has a regular and established place of business.  28 U.S.C. § 1400(b).  Because Sealift does not have an established place of business in Michigan, subsection (b) is not applicable.  If a corporate defendant does not have a

regular and established place of business in the venue, it must "reside" there.  A corporate defendant is deemed to reside "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c); North Am. Philips Corp., 35 F. 3d at 1577 n.1 ("[t]he venue issue is subsumed in the personal jurisdiction issue. Venue lies ipso facto if . . . the district court has personal jurisdiction over [the defendants]). Having concluded that the Court does not have personal jurisdiction over Sealift, the Western District of Michigan is not a proper venue.


Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss for lack of personal jurisdiction or improper venue (docket #6), and DISMISSES this case WITHOUT PREJUDICE.


So ordered this 19th day of July, 2006.


 /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge